IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

CHADWICK HENN,

                Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

No. C12-3066-MWB

**REPORT AND
RECOMMENDATION**

---

### *Introduction*

Plaintiff Chadwick Henn seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Henn contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he is not disabled. For the reasons discussed below, I recommend the decision be reversed and remanded for further consideration.

### *Background*

Henn was born in 1975 and completed high school. AR 33-34. He previously worked as an industrial cleaner, welder, production worker, home attendant and assembler. AR 48, 285. Henn protectively filed for DIB and SSI on January 29, 2010, alleging disability beginning on June 27, 2009, due to schizoaffective disorder and depression, recurrent and severe. AR 177, 181. His claims were denied initially and on reconsideration. AR 55-59. Henn requested a hearing before an Administrative

Law Judge (ALJ).  AR 78-79.  On November 3, 2011, ALJ Thomas Donahue held a hearing via video conference during which Henn and a vocational expert (VE) testified. AR 30-54.

On December 1, 2011, the ALJ issued a decision finding Henn not disabled.  AR 13-24.  Henn sought review of this decision by the Appeals Council, which denied review on August 9, 2012.  AR 1-3.  The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

On September 19, 2012, Henn filed a complaint in this court seeking review of the ALJ's decision.  This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.  The parties have briefed the issues, and the matter is now fully submitted.

## Summary of ALJ's Decision

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)    The claimant has not engaged in substantial gainful activity since June 27, 2009, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: bipolar disorder, schizoaffective disorder, polysubstance dependence to include alcohol, amphetamines, opiates and marijuana (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(5)    After careful consideration of the entire record, the undersigned finds that, based on all of the

impairments, including the substance use disorders, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry 50 pounds occasionally and 25 pounds frequently. He can sit and stand two hours at one time for a total of six hours in an eight hour day. He requires a low stress job of a four on a scale of one to ten. He cannot have contact with the public and would require limited contact with co-workers. He can perform more than routine and less than complex tasks. Due to substance abuse the claimant would miss three or more days of work per month.

(6)     The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on March 11, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11)    If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would

continue to have a severe impairment or combination of impairments.

(12) If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments, that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(13) If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift and carry 50 pounds occasionally and 25 pounds frequently. He can sit and stand two hours at one time for a total of six hours in an eight hour day. He can walk three blocks. He requires a low stress job of a four on a scale one to ten. He cannot have contact with the public and would require limited contact with co-workers. He can perform more than routine work but less than complex tasks.

(14) If the claimant stopped the substance use, the claimant would be able to perform past relevant work as an industrial cleaner and production worker. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965).

(15) The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(f), 404.1535, 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR 15-23.

The ALJ first considered all of Henn's impairments including the substance use disorder. He found that none of Henn's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 16. The paragraph B criteria for the relevant listed impairments require that the impairments cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. The ALJ concluded that Henn had mild restriction in activities of daily living, moderate difficulty in social functioning and marked difficulty in concentration, persistence or pace. Henn had also experienced one to two episodes of decompensation.[1] Therefore, the ALJ found the criteria were not satisfied.

The ALJ then provided a residual functional capacity assessment based on all impairments, including the substance use disorder. AR 17. He found that Henn could perform medium work with the following limitations: he could lift and carry 50 pounds occasionally and 25 pounds frequently; sit and stand two hours at a time for a total of six hours in an eight hour day; required a low stress job of a four on a scale of one to ten; could not have contact with the public; would require limited contact with co-workers; and could perform more than routine and less than complex tasks. He would be expected to miss three or more days of work per month due to substance abuse. *Id.*

In this RFC assessment, the ALJ found Henn credible concerning his symptoms and limitations. He noted that his substance use made his dependability questionable for a potential employer and would require an employer who would tolerate multiple

---

[1] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If the episodes of decompensation are more frequent and of shorter duration or less frequent and of longer duration, the Commissioner must "use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

unexcused absences per month. The ALJ noted that medical evidence established drug and alcohol abuse after Henn's alleged onset date. *Id.*

Under this RFC, the ALJ found Henn was unable to perform past relevant work because he would experience multiple unexcused absences per month. The ALJ also found that there were no other jobs that existed in significant numbers in the national economy that Henn could perform when considering his age, education, work experience, and residual functional capacity that had been calculated based on all his impairments, including his substance use disorder. AR 18. Under this RFC, which included limitations associated with Henn's substance use disorder, the ALJ would find Henn disabled.

In accordance with the regulations, the ALJ went on to analyze Henn's RFC without the substance use disorder. He found that even without substance use, Henn would continue to have a severe impairment or combination of impairments. He again found that these did not meet or equal a listing based on the same reasoning. AR 19. Without the substance use, the ALJ found the same RFC, except he added a physical limitation that Henn could walk only three blocks[2] and he found that Henn would no longer be expected to miss three or more days of work per month. *Id.*

In evaluating this RFC, the ALJ considered Henn's testimony and other subjective allegations but found they were not credible because they were not supported by the objective medical evidence in the record. He also considered third party function reports from Cindy Henn (Henn's mother), Jane Fisher, a social worker, and Georgia Squier, a caregiver at a residential facility. AR 20-21. The ALJ found that the third party function reports did not establish that Henn was disabled. AR 21. He also discredited their reports because they were not medically trained to make exacting

---

[2] The ALJ did not explain why Henn would have no walking limitation with substance abuse, but could walk no more than three blocks without substance use. Based on my review of the entire record, I believe the ALJ intended to include the walking limitation as part of both RFCs but inadvertently omitted it from the "with substance use" RFC. In any event, the apparent discrepancy is not material to any of the issues Henn raises in this case.

observations of factors related to Henn's impairments, so the accuracy of their statements was questionable, they could not be considered disinterested third parties because of their affection for Henn and their natural tendency to agree with the symptoms and limitations he alleged and like Henn's own allegations, they were not consistent with the preponderance of the opinions and observations of medical doctors. *Id.*

As for the medical evidence, the ALJ found that it failed to provide strong support for Henn's allegations of symptoms and limitations. *Id.* He noted Henn had been hospitalized from September 3, 2009, through September 14, 2009, for auditory hallucinations which dissipated after he was given medication. *Id.* He was hospitalized again in November 2009 when he was found unconscious from an apparent suicide attempt. At that time, a urine drug screen came back positive for amphetamines. *Id.* Following this hospitalization, Henn was transferred to Cherokee Mental Health Institute under court order. AR 22. Henn reported suicidal ideation and auditory hallucinations. He was diagnosed with schizoaffective disorder. Henn had lost his job and insurance in May 2009 and stopped taking his medications. His hallucinations worsened, but improved once he began taking his medication again. He complained of anxiety but did not exhibit behaviors consistent with anxiety. He was discharged from Cherokee Mental Health on January 21, 2010. *Id.*

Henn then went to live at Spring Harbor Residence, a residential care facility. He experienced only occasional auditory hallucinations, but continued feeling anxious and depressed. During his stay, some of his medications were discontinued at Henn's request because he was feeling better and more alert. In July 2010, he reported feeling more social. However, one weekend he went to a wedding with his mother and ended up drinking six beers. Later, he became angry at a Spring Harbor employee and punched a wall, breaking his hand. While at Spring Harbor, Henn tried to find part-time work and attend AA meetings. *Id.*

The ALJ then described Henn's experience at the North Iowa Transition Center, where he lived and underwent substance abuse treatment beginning in April 2011. Henn reported he drank daily until November 2009. In the past year, he had consumed alcohol on three occasions. His last date of use for methamphetamine was in November 2009. Henn also described his abuse of hydrocodone, oxycodone, LSD and THC in the past. The ALJ noted Henn voluntarily left treatment in May 2011 and staff noted that he smelled of alcohol. He was scheduled to begin work at a thrift shop on May 9, 2011. *Id.*

In June 2011, Henn attempted suicide by overdosing on Seroquel and multiple over-the-counter antihistamines. He drove to the hospital and went into respiratory distress. He was later transferred to the psychiatric unit after a violent outburst. He was given medications and discharged seven days later. AR 22-23. At a follow up visit in August 2011, he denied delusions, hallucinations, suicidal thoughts, or feelings of hopelessness or worthlessness. He reported he had been sober for a year and he was working at a thrift store. AR 23.

The ALJ noted that no treating sources had provided opinions indicating that Henn was disabled or had limitations greater than those identified in the RFC. He gave significant weight to the opinions of the state agency consultants because he found them to be consistent with the medical evidence as a whole. *Id.*

The ALJ found the RFC was supported by objective medical evidence, the medical opinions when afforded appropriate weight and Henn's subjective complaints during the relevant period, when taken in proper context. He found that Henn would be able to perform his past relevant work as an industrial cleaner and production worker with this RFC if substance use was not a factor. Therefore, the ALJ found Henn's substance use disorder was a contributing factor material to the determination of disability because Henn would not be disabled if he stopped the substance use. Due to this finding, he concluded that Henn had not been disabled since his alleged onset date. *Id.*

### *Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions;

(4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-

medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence

and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.

1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## *Discussion*

### A.    *Substance Use as a Contributing Factor*

Henn argues that the ALJ erred by finding that substance use was a contributing factor and that Henn's condition would not be disabling if substance use ceased. Henn emphasizes that his last instance of drug use was in November 2009 and while there have been three instances of alcohol use since his alleged onset date, there is no evidence suggesting substance use is a contributing factor to his disability or primarily affects his ability to work. Henn argues substantial evidence in the record demonstrates that it is his mental impairment, not substance use, that makes it difficult for him to work.

The Commissioner argues the ALJ properly evaluated Henn's substance use as a material factor. She points out that the record shows a general pattern of improvement of symptoms when Henn was abstaining from drugs and alcohol, receiving treatment and taking his medications as prescribed. She further notes that since Henn's alleged onset date, he used methamphetamine on one occasion, used alcohol on at least three occasions and overdosed on his medication and over-the-counter antihistamines on one occasion. She argues that this evidence supports the ALJ's determination that absent substance use, Henn's remaining impairments are not disabling.

"An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The process for evaluating drug addiction or alcoholism is described as follows:

(1)     The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2)     In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

     (i)     If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

     (ii)     If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935. If the ALJ is unable to decide whether substance use disorder is a contributing factor, an award of benefits must follow. *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). The claimant has the burden of proving that substance abuse is not a contributing factor material to the disability determination. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). However, this does not alleviate the ALJ's duty to develop a full and fair record and support his conclusion with substantial evidence. *Brueggemann*, 348 F.3d at 695.

The ALJ concluded Henn's substance use was a contributing factor material to a finding of disability. The only difference between the RFC determinations with and without considering the substance use disorder is a limitation on the distance Henn could be expected to walk and the number of unexcused absences he could be expected

to have.  AR 17, 19.  The ALJ found that Henn would miss three or more days of work each month due to substance use.  The record suggests that Henn's last drug use was in November 2009, but he continued to use alcohol[3] through the date of the ALJ's decision.  Procedurally, Henn takes no issue with the ALJ's analysis of substance use, but he does challenge the ALJ's conclusion that Henn's impairments would not be considered disabling if substance use was absent.  I must determine whether substantial evidence in the record as a whole supports this conclusion.

Henn has suffered from suicidal ideation, auditory hallucinations and other psychotic symptoms since he was 19 years old.  AR 313.  At that time, he had been using LSD and methamphetamine.  He was diagnosed with schizoaffective disorder and had constant psychotic symptoms from 1995 to 1997.  He saw psychiatrists who tried various medications to relieve his symptoms.  *Id.*  From 1997 to 2009, Henn was symptom-free.  In May 2009, he lost his job and insurance and stopped taking his medications.  *Id.*  His symptoms returned.

In July 2009, Henn overdosed on his medication and was admitted for severe depression.  AR 532.  He denied use of substances within the past year and tested negative for all substances.  AR 307-08.  He also went through a chemical dependency consultation, which resulted in a finding that his polysubstance dependence was in full remission.  The doctors recommended treatment that focused on Henn's mental health issues.  AR 309-10.  Henn explained he had been very depressed recently and had been missing work and isolating.  *Id.*  His medications were adjusted and his doctor arranged for dialectical behavior therapy to address his ongoing mental health.  AR 307-10.  He was hospitalized for seven days.  *Id.*

In September 2009, Henn went to the emergency room after experiencing hallucinations for the past five days.  He heard multiple voices talking to each other and

---

[3] Henn admitted that he drank alcohol on three occasions while living at Spring Harbor from April 2010 to April 2011.  AR 419-21.  Additionally, on May 11, 2011, staff at North Iowa Transition Center smelled alcohol on Henn when he left the facility and discharge notes indicate he had smelled of alcohol on two prior occasions. AR 430-33.

calling him names. AR 302-03. He indicated that he felt very depressed and had suicidal and homicidal ideation. *Id.* He said he had not used drugs for the past five months. AR 304-05. Henn was admitted and placed on medication. AR 302-03. His hallucinations dissipated and he denied suicidal or homicidal thoughts when discharged 12 days later. *Id.*

In November 2009, Henn was found unconscious. He was taken by ambulance to Mercy Medical Center and had to be intubated. Henn had overdosed on his medication and admitted he had also been using methamphetamine for the past week. AR 534. He was given medication, but continued to report auditory and visual hallucinations and suicidal ideation. AR 300. His medication was adjusted and he continued to report psychotic symptoms and was anxious and dysphoric. *Id.* He was hospitalized for 14 days and then transferred to the Cherokee Mental Health Institute pursuant to court order for long-term psychiatric hospitalization. *Id.* His GAF score was 25 upon admission.[4] AR 315.

While at Cherokee Mental Health, Henn continued to experience anxiety and auditory and tactile hallucinations. AR 318-34. His medications were adjusted and he was discharged on January 21, 2010, with a GAF score of 55.[5] AR 332-34. The physician noted that he anticipated Henn's underlying personality disorder and mental illness would continue to be a problem for him and noted that Henn needed to live in a structured setting and continue individual counseling. AR 334. Henn was discharged to Spring Harbor, a residential care facility.

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 21 to 30 indicates behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment or inability to function in almost all areas. *Id.*

[5] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. DSM-IV at 34.

Henn continued therapy services with the Mental Health Center of North Iowa while living at Spring Harbor. AR 346. On February 26, 2010, Dr. Safir Azam noted that Henn reported he occasionally experienced auditory hallucinations and would feel anxious and depressed, although he was doing well at the time. *Id.* Dr. Azam assigned a GAF score of 48 and noted Henn had moderate to severe social and occupational problems.[6] *Id.* By April, Henn reported that he was doing well at Spring Harbor except that he tended to get paranoid and felt as if people were after him and talking about him. His GAF score at that time was 50. AR 388. In May, Henn felt that he was doing better and his medication was decreased. AR 383. On July 6, 2010, Henn reported that he had recently gone to a wedding with his mother. He became anxious being around so many people he did not know and he went outside to be alone. While outside, someone offered him beer and he ended up drinking six beers. AR 409. Henn's therapy continued to be focused on his coping skills and self-esteem. *Id.*

On July 14, 2010, an employee at Spring Harbor spoke to Henn about the facility's expectation that he seek employment. Henn became angry, threatened to leave and punched a door, breaking his hand. AR 398-99. Henn told his therapist he was not happy living at Spring Harbor. He described the altercation with the employee, saying she had woken him up, called him names and told him he should leave because no one wanted him there. AR 411. By September, Henn was still frustrated about living at Spring Harbor. AR 415. He said he felt anxious and trapped there. He had applied for a job and hoped that he would be able to live on his own once employed. *Id.*

In October 2010, Dr. Rogerio Ramos prepared paperwork to discontinue Henn's court-ordered commitment to Spring Harbor. AR 554. At that time, Henn had a GAF score of 50. *Id.* On October 21, Henn left Spring Harbor on his own and walked to a nearby town. AR 524-25. He appeared at the emergency room feeling depressed and

---

[6] A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

suicidal. AR 526-27. His GAF score was 25. AR 528-29. Henn explained to a social worker that he felt he was above the normal functioning of the people at Spring Harbor. AR 524-25. He said he got bored, broke rules and drank on three occasions. *Id.* The social worker noted that Henn's use of substances was exacerbated by his psychiatric condition and recommended that they be treated simultaneously. *Id.* He believed Henn needed residential placement where he could receive support and structure for his psychiatric illness and could also receive treatment for his substance use as an outpatient. *Id.* Henn was released from the hospital a week later. *Id.*

Henn then went to live with his mother. AR 519-21. He returned to the emergency room on March 18, 2011, complaining of tactile hallucinations for the past couple months and stated that he had recently run out of his medication. *Id.* He was experiencing mood swings and suicidal ideation. His GAF score at the time was 25 and his medications were restarted. *Id.* A drug screen came back positive for amphetamine, but the doctor noted this appeared to have resulted from taking cold medication rather than a relapse. AR 517-18. He was discharged a week later to the North Iowa Transition Center (NITC), a residential care facility. *Id.*

NITC required Henn to undergo a substance abuse evaluation based on his history of substance use. AR 419. A counselor at Prairie Ridge Addiction Treatment Services noted that he had made crisis calls to the agency over the past two years and had also completed residential treatment there at one time. *Id.* Henn had been discharged for dual diagnosis programming due to the difficulty he was having with his mental health issues. *Id.* Henn admitted to the counselor that he drank alcohol on three occasions in the past year and his last date of use had been six months ago when he left Spring Harbor. *Id.* Henn explained his past use of methamphetamine, LSD, THC and opiates as well as his mental health history. AR 419-21. He believed his mental health issues were stable at that time. AR 420. The counselor found that Henn was in partial sustained remission from alcohol and full sustained remission from amphetamines, opiates and THC. AR 421.

Henn left NITC on May 11, 2011. AR 430-33. Staff noted he smelled of alcohol when he left and had previously smelled of alcohol on two other occasions. *Id.* His discharge summary noted he had been scheduled to begin work at a thrift store on May 9, 2011. On June 9, 2011, Henn appeared at the emergency room after his girlfriend's grandmother told him he could no longer stay at her residence. AR 510-12. He had started cutting himself a few days earlier and had multiple superficial lacerations on his left arm. *Id.* The doctor noted he was suicidal and homeless and admitted him to the psychiatric unit. *Id.* His GAF score was 25. *Id.* Henn indicated he wanted to stay in the area because he had a job at a thrift store that had been going well for him. AR 508-09. He was discharged to a homeless shelter five days after admission with medication and follow-up appointments.

The day after he was discharged, Henn appeared at the emergency room after overdosing on his medication and multiple over-the-counter antihistamines. AR 493-94. He had had an altercation with his girlfriend. *Id.* A psychological consultation was ordered and a urine drug screen came back negative for substances except alcohol. AR 496-97, 499. His GAF score was 27. AR 497. He was admitted for inpatient psychiatric care. During his stay there, his anxiety became exacerbated and he would become violent and slam his body up against a door. AR 501-02. The doctor noted this occurred a couple of times after Henn had been given the maximum dose of his psychiatric medications. *Id.* At the time of discharge a week later, Henn denied feelings of anxiety and said his mood had improved. *Id.*

Henn followed-up with Mark Lassise, M.D., in August 2011. He reported that he had been clean and sober for over a year and was living at the homeless shelter. AR 558. He was still working at the thrift store. *Id.* Dr. Lassise assigned a GAF score of 45. AR 559. At the end of the month, his GAF score was the same although he felt Henn's mental status had improved. AR 556-57. His affect was bland without lability and he was not having any delusions, hallucinations or suicidal or homicidal thoughts. *Id.*

On October 9, 2011, Henn presented with suicidal ideation, depression and anxiety to the emergency room. AR 562-63. These symptoms had been ongoing for four days and were worsening. *Id.* A urine drug screen came back negative. AR 569. His medications were adjusted and he was discharged four days later. AR 567. Upon discharge, his condition was described as "fair" with a notation that this was his baseline. *Id*.

In light of this history, substantial evidence in the record does not support the ALJ's decision that Henn would not be disabled if substance use was absent. The only significant difference between the ALJ's two RFCs (with and without substance use) is the limitation of three or more days of missed work each month, which the ALJ attributed to substance use. AR 17, 19. Nothing in the record supports the conclusion that this limitation is caused by substance use rather than Henn's mental impairments.

As noted above, the record contains no evidence of drug use after November 2009 and only sporadic evidence of alcohol use. Moreover, there is no evidence that Henn's difficulties with excessive absenteeism at his part-time job were the result of substance use. Henn testified that he worked at the thrift store two or three days a week for a total of 10 to 15 hours per week. AR 40. He attended only about half of his scheduled workdays because he was "just too stressed out to even be around those people." AR 41. His employer reported that Henn was given special accommodations with regard to attendance due to his mental impairment. AR 276-77. He was also allowed to work at his own pace and take extra breaks as needed. *Id.* His employer further stated that he would not recommend Henn for full-time competitive employment due to unacceptable attendance. *Id.* A report from vocational services also noted that Henn's medical and mental health issues affected his attendance and he would sometimes leave work early because he was not feeling well or had anxiety. AR 292-95. Henn testified he had to leave this job because he could not handle the stress. AR 41. He stated alcohol use was not the reason he left. *Id.* All of this evidence is

contrary to the ALJ's RFC finding that substance use, rather than mental impairments, would cause Henn to miss three or more days of work each month.

In addition, the ALJ misinterpreted Henn's placement at NITC in April 2011, stating that Henn was admitted to NITC "for substance abuse treatment." AR 22. This is incorrect. NITC is a residential treatment facility that provides community-based services to individuals with a serious mental illness.[7] Henn was discharged to NITC after a one-week hospitalization for tactile hallucinations and suicidal ideation after running out of medication. AR 518-19. The admission intake notes from NITC indicate that Henn reported he would isolate and be more likely to drink alcohol and self-medicate when he was feeling sad. AR 438. One of his goals at NITC was to maintain his sobriety. AR 437. To help him with that goal, he was referred to Prairie Ridge Addiction Treatment Services for therapy. AR 440. During his initial assessment there, the counselor noted that Henn met the diagnostic criteria for polysubstance dependence, but also noted that his primary issues stemmed from his mental health impairments. AR 421. She recommended individual therapy on a weekly basis. *Id.* While at NITC, Henn worked on developing basic community living skills, met with staff to process his mental health symptoms and concerns and was also educated on how substance use impacted the effectiveness of his medications. AR 431. The ALJ erred by failing to recognize that Henn's placement at NITC was primarily for his mental health issues, not for substance abuse treatment.

As discussed in detail above, evidence of substance use is certainly not absent from the record. However, there is extensive evidence of hospitalizations and court-ordered placements in residential care facilities due to Henn's mental impairments.[8]

---

[7] *See* North Iowa Transition Center, http://www.northiowatransitioncenter.org/index.html (last visited September 5, 2013).

[8] In fact, I do not understand how the ALJ concluded that Henn had only one to two episodes of decompensation given the number of hospitalizations and placements in residential care facilities documented in the record. *See* 20 CFR Part 404, Subpart P, Appendix 1 (Episodes of

For the reasons outlined above, I cannot find that the ALJ's decision is supported by substantial evidence in the record as a whole. This case should be remanded for the ALJ to reevaluate whether substance use is a contributing factor material to a finding of disability. First, the ALJ must reevaluate whether Henn's hospitalizations and placements in residential care facilities qualify as repeated episodes of decompensation as defined in 20 CFR Part 404, Subpart P, Appendix 1 for purposes of determining whether his impairments meet a listing. If he finds they do not, the ALJ shall reconsider the evidence concerning Henn's employment at the thrift store and his placement at NITC in determining whether substance use is a contributing factor material to a finding of disability. If the ALJ finds that Henn's limitations are a result of his mental impairments, or if he is unable to determine whether substance use is truly a contributing factor, then he must award benefits. If he finds that substance use is a contributing factor, his conclusion must be supported by substantial evidence in the record as a whole.

**B.      *Other Factors***

Henn also argues the ALJ erred in his evaluation of the medical records from Henn's treating physicians, his credibility determinations and the hypothetical provided to the VE. I have already found that the ALJ's decision should be remanded for further consideration but because this is a Report and Recommendation, I will address these additional arguments as well.

---

decompensation can "be inferred from medical records showing . . . documentation of the need for a more structured psychological support system (such as hospitalizations, placement in a halfway house, or a highly structured and directing household)). Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks, and the Commissioner "must use judgment to determine if the duration and functional effects of the episodes are of equal severity." *Id.*

## 1. *Evaluation of the Medical Evidence*

Henn's primary disagreement with the ALJ's analysis of his medical records is that the ALJ did not give enough weight to Henn's GAF scores. He emphasizes that his GAF scores were routinely in the twenties when he was hospitalized for suicidal ideation and suicide attempts and after he was stabilized and released they were still only between 40 and 50. Henn argues the ALJ failed to give good reasons for not giving these treating physician "opinions" great weight.

Henn's characterization of the medical records and GAF scores from his treating physicians as "opinions" is incorrect. Medical opinions are distinguished from medical evidence under the regulations. "Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Medical evidence is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2). The ALJ is only required to describe the weight he gave to medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). None of Henn's treating sources provided "medical opinions." Therefore, the ALJ was not required to describe how he weighed the medical records from these sources.

However, this does highlight the issue of how the ALJ interpreted the lack of medical opinions from treating sources. The ALJ remarked, "As for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." AR 22. This statement contains an improper suggestion that the lack of opinions from treating sources supports the ALJ's RFC determination and the conclusion that Henn is not disabled. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work

capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment."). The ALJ erred by using the lack of medical opinions from treating sources as evidence in support of his decision.

As for the GAF scores reflected in the medical records, the Eighth Circuit has found that GAF scores below 50 can demonstrate moderate to complete impairment in work-related skills. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). In *Pate-Fires*, the claimant's GAF scores ranged from 10 to 58 with scores above 50 only four out of twenty-one times in a six-year period. *Id.* at 944. The court noted that the history of GAF scores at 50 or below, taken as a whole, indicated the claimant had serious symptoms and/or impairments in social, occupational or school functioning, which the ALJ failed to discuss. *Id.* The court found that this evidence supported the claimant's treating physician's opinion that she was not capable of participating in gainful employment. *Id.* Despite the significance of the GAF scores in that case, the Eighth Circuit has held that GAF scores are not essential to the accuracy of a RFC determination, but may be of considerable use in formulating the RFC. *Earnheart v. Astrue*, 484 F. App'x 73, 75 (8th Cir. 2012).

In this case, the ALJ failed to discuss Henn's GAF scores. Although the ALJ was not required to utilize Henn's GAF scores in formulating his RFC, Henn's history of GAF scores reflects serious mental symptoms and impairments that are the best indication of how his treating providers assessed his condition at various times. Henn was assessed the following GAF scores since his alleged onset date (dates marked with asterisks indicate evaluations where there was evidence of substance use):

| Date | GAF | Record |
|------|-----|--------|
| 09/03/09 | $20^9$ | AR 305 |
| 11/10/09* | 30 | AR 300-01 |
| 11/24/09 | 25 | AR 315 |
| 12/01/09 | 45 | AR 318 |
| 02/26/10 | 48 | AR 346 |
| 04/20/10 | 50 | AR 388 |
| 07/08/10 | 50 | AR 404 |
| 10/07/10 | 50 | AR 554 |
| 10/21/10 | 25 | AR 529 |
| 03/18/11 | 25 | AR 521 |
| 05/11/11 | 55 | AR 553 |
| 06/14/11* | 27 | AR 497 |
| 07/21/11 | 55 | AR 552 |
| 08/03/11 | 45 | AR 559 |
| 08/31/11 | 46 | AR 556 |
| 10/09/11 | 26 | AR 570 |

While some of these scores reflect instances of suicidal ideation or suicide attempts that involved substance use, several others were assessed by Henn's treating providers when his alcohol and drug use were in remission and Henn was receiving services from a residential care facility. Even if alcohol was detected in Henn's system during some of his hospitalizations, this does not necessarily mean that alcohol was the primary reason for his destabilization. *See Malmquist v. Astrue*, No. C 07-3085-MWB, 2008 WL 5423481, at *5 (N.D. Iowa Dec. 29, 2008) (finding that the ALJ relied on the faulty

---

[9] A GAF score of 11 to 20 indicates some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent, manic excitement). DSM-IV at 34.

assumption that the claimant's use of alcohol or drugs before hospitalizations meant that the use of those substances caused the hospitalizations when there was ample evidence in the record that the claimant's hospitalizations and other mental problems were caused by other factors).  On remand, the ALJ should carefully evaluate the medical evidence (and obtain additional evidence if he finds it necessary) to determine the severity of Henn's mental impairments and associated limitations without substance use.

The ALJ's evaluation of the medical evidence does not demonstrate that he considered the limitations associated with Henn's mental impairments alone.  He primarily focused on instances of Henn's alcohol use and history of polysubstance dependence without evaluating Henn's functional abilities based solely on his mental impairments.  He improperly inferred that the lack of medical opinions from treating physicians supported his conclusion that Henn was not disabled if substance use was absent.  Finally, while he was not required to analyze Henn's GAF scores in determining his RFC, those scores reflect serious limitations that are contrary to the ALJ's decision that Henn is not disabled absent substance use and able to return to his past work.  On remand, the ALJ shall reevaluate the medical evidence and provide good reasons supported by substantial evidence to support his decision.

### 2.     *Credibility Determinations*

Henn also argues the ALJ erred in evaluating the credibility of Henn's subjective allegations and the opinions expressed by third parties in function reports.  As to his own allegations, Henn argues the ALJ failed to consider his past work record, which Henn contends should have enhanced his credibility because it demonstrated his desire to work.  I find that the ALJ did not err in this aspect of his credibility determination.

"[T]he ALJ need not explicitly discuss each *Polaski* factor."  *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).  "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints."  *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). "If an ALJ explicitly

discredits a claimant's testimony and gives a good reason for doing so, [the court] will normally defer to that judgment." *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). The ALJ did not err by failing to discuss Henn's work history. However, the only reasons the ALJ provided for discrediting Henn were that "the objective findings in this case fail to provide strong support for the allegations of symptoms which produce limitations on the claimant's ability to perform basic work activities" and "significant weight cannot be given to the [third party] statements because it [sic], like the claimant's is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR 21.

These reasons are insufficient. *See Polaski*, 751 F.2d at 948 ("The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them."). The ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003). Because the ALJ's only stated reason for discrediting Henn was the lack of objective evidence to support his complaints, it does not deserve deference. On remand, the ALJ shall reevaluate Henn's subjective allegations and provide good reasons supported by substantial evidence if he finds that Henn's subjective allegations are not credible.

Henn also challenges the ALJ's evaluation of the third-parties' credibility. Third party function reports were provided by Cindy Henn (Henn's mother), Jane Fisher, a county social worker, and Georgia Squier, a caregiver at Spring Harbor. The ALJ summarized their reports and found that they did not establish that Henn was disabled. He provided the following reasons for discrediting their allegations: (1) they are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms so the accuracy of their statements is questionable; (2) by virtue of their relationship with Henn they cannot be considered disinterested third parties whose statements would not tend to be colored by affection for the claimant and a natural

tendency to agree with the symptoms and limitations he alleges and (3) significant weight cannot be given to their statements because, like Henn's allegations, they are not consistent with the preponderance of the opinions and observations by medical doctors in this case.  AR 21.

These are not good reasons for discrediting the third party function reports.  The ALJ's first reason (lack of medical training) ignores the purpose of third party function reports.  *See* 20 C.F.R. § 404.1529 ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms.").  The fact that the third parties' observations do not come from a medical perspective is not a reason to discredit them, as that is not their purpose.

The ALJ's second reason (affection for the claimant) could apply to the statements provided by Henn's mother.  It is not a good reason to discredit Fisher's or Squier's reports, as they made their statements in their professional capacities and work with people who have similar impairments every day.  Nothing in the record supports a finding that they have a special or unique relationship with Henn that would cause them to provide biased statements.  Finally, the ALJ found that their statements, like Henn's, were not consistent with the objective medical evidence, but he failed to set forth any of the inconsistencies.  *See Lewis*, 353 F.3d at 647 (the ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found.").

While the ALJ was entitled to discredit Henn's mother's function report based on her relationship with Henn, on remand he must reevaluate the credibility of Fisher's and Squier's function reports.  If the ALJ again finds that they are not credible, he must provide good reasons for that conclusion, supported by substantial evidence.

### 3. VE's Testimony

Henn argues the ALJ's hypothetical to the VE was flawed because it did not contain the limitation of frequent absenteeism due to his mental impairment. The ALJ gave the VE the following hypothetical:

> The first hypothetical, age 36, a male, 12th grade education, the past relevant work set forth in 19-E; lifting 50 pounds occasionally, 25 pounds frequently; sitting and stand[ing] two hours at a time for six of an eight-hour day; walking three blocks; would need a low stress level, such as level four, with ten being the most stressful and one being the least stressful; would require a job with no contact with the general public and limited contact with fellow workers; would be . . . limited to more than routine tasks, but less than complex.

AR 49. The VE testified that under this hypothetical, Henn's past work as an industrial cleaner and production worker would be available as he had performed it. *Id.* The ALJ's second hypothetical included the additional limitations that "[d]ue to drug and alcohol addiction, the claimant would miss three or more days of work per month. AR 50. The VE testified that no past relevant work or other unskilled work would be available. The ALJ then asked if any work would be available if the claimant would miss three or more days of work per month due to chronic pain syndrome, depression, mental impairment or any other reason besides drug and alcohol addiction. The VE testified that no full-time competitive work would be available regardless of the reason.

Contrary to Henn's argument, the ALJ included the limitation of frequent absenteeism due to mental impairments in his hypothetical to the VE. Henn simply disagrees with the ALJ's finding that that limitation is attributed to his substance use rather than his mental impairment. I find that the ALJ's hypothetical questions adequately captured the limitations that the ALJ determined were credible. However, the ALJ may need to obtain additional VE testimony based on the findings he makes on remand.

### *Conclusion and Recommendation*

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **reversed** and this case be **remanded** for further proceedings consistent with this report. Judgment should be entered in favor of Henn and against the Commissioner.

On remand, the ALJ should conduct a new analysis of whether Henn has experienced repeated episodes of decompensation for purposes of determining if Henn's impairments, taken individually or in combination, meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. If the ALJ determines his impairments meet or equal a listing based on this new analysis, he must award benefits. If not, he shall:

> a) Conduct a new analysis of whether substance use is a contributing factor, taking into account evidence of Henn's part-time work and the nature of the services provided at NITC. Any limitations associated with Henn's substance use disorder but not his mental health disorders (or vice versa) must be supported by substantial evidence in the record as a whole.
>
> b) Conduct a new analysis of the medical evidence in the record, particularly focusing on the limitations associated with Henn's mental impairments alone.
>
> c) Conduct a new analysis of Henn's credibility and the credibility of the third party function reports provided by Fisher and Squier. The ALJ must provide other reasons besides the lack of objective medical evidence in support of Henn's assertions if he finds that Henn's allegations are not credible. He should also state whether he is crediting or discrediting Fisher and Squier's reports and provide good reasons supported by substantial evidence in the record as a whole if he finds they are not credible.

Based on the outcome of these new analyses, the ALJ may need to revisit and/or modify other aspects of the prior decision, including but not limited to the ALJ's findings with regard to Henn's RFC (with and without substance use as a factor) and, of course, the ultimate decision as to whether Henn is disabled within the meaning of the Act.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 5th day of September, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE